Good morning, Your Honors. May it please the Court. Marilyn Bednarski on behalf of Mr. Doucette. I want to address the ex post facto argument. Our argument is that the current version of 1B1.10 as applied to him violates the ex post facto provisions. There are numerous Supreme Courts rulings and opinions that have said there's no bright line rule to when ex post facto applies and it's a matter of degree. On the one end of the scale of that degree is Morales, which involved a law that the Court determined was too speculative a risk of increased punishment and therefore found it was not ex post facto. And that law had to do with California changing when someone was available or could come for a suitability hearing for parole. They changed the rules to being every three years rather than one, but in a certain urgent situation they allowed for somebody to ask for it to be heard sooner. While it made it more difficult for someone to get parole, it didn't increase his punishment or make it more burdensome. On the other end of the scale of ex post facto are Miller, Weaver, Pugh. Better addressed Trujillo. I thought Trujillo precluded your ex post facto argument. The reason why I didn't think so, Your Honor, respectfully, first of all, that's a new argument that the government raised and it's 28J. Well, you already know how sympathetic I am with your position on this. It seemed really outrageous to me, 28J letter. So I haven't. Justification even more so, but still. Happy to address it. We're required to take account of cases whether they're cited to us or not that are controlling authority. The reason why I don't think it's controlling is I think it's dicta in Trujillo and it also cites no cases. I saw no authority for the position that that panel took in Trujillo saying. The thing is, we're bound by a prior panel's decision, even if we think it showed craftsmanship less than we'd like or if it didn't cite authority for something. There just wasn't any reasoning in there that we can say. What we're just trying to say is when there's a decision, good or bad, reasoning or not, we're bound by it. Well, it seems to me that the amendment that dealing with 759 had four changes to 1B1.10. I don't see why they could have done multiple amendments making one change in each amendment. I don't see why they're not severable. I don't see why you can't take the fact that the new change to 1B1.10 made the 2D1.1 crack retroactive, but also find. The whole post facto thing has been a problem in these revised crack guidelines cases because when the defendant committed the crime, he was subject to a sentence so much harsher than, rather than so much more lenient than the subsequent version of the guidelines. Now, the difference in changing when somebody is eligible for parole, a person looks forward to his parole date because he has a real chance of getting out, and then if that parole appointment is taken away from him and he has to wait an additional period of time, something real has been taken away as opposed to some benefit given, but not to him. Well, there's also cases where they say it's ex post facto to take away discretionary variance, or where it's ex post facto that guidelines, even though their advisory are presumptive and not mandatory, make a sentence, a harder sentence more likely. In our case, what it does is it completely takes away any opportunity for reduction. So, for instance, Mr. Giussette. That opportunity existed earlier. Opposing counsel's argument, of course, is this is just a clarification. But it's not a clarification because the opportunity existed for him to have a reduction in 2008, and according to the 2011 amendment, 759, he has no reduction available to him at all. He's excluded under the reading of 1D1.10 that the government says must be given. And so it's a complete exclusion of an opportunity to get less than his 120 months. That's the effect. And that effect satisfies the substantial risk test. I mean, he cannot do less than 120, whereas under the 2008 1D1.10, he could have applied for a reduction. And that is now foreclosed to him under the present reading. So your response to Trujillo, in addition to thinking that it's not well-reasoned, is that you think it's dicta? I do. Okay. And the Galleon case, I think, which is the other case that the government cites as an unpublished memorandum disposition that just refers to Trujillo and gives no further, you know, reasoning. This is a case, Your Honor, where my client's expectation as of the 2008 reading of 1D1.10 is very realistic. Everything since 2008 has been, has tended in favor of remedying the disparity between crack and powder. Congress started in 1995 wrangling with that. It was always in the news. For years, they wrangled with how to change that disparity, and everything subsequent was consistent. What they did is they tried to greatly reduce the disparity of sentences based on excessive sentences for crack as compared with cocaine, but they made an exception for career criminals. Well, it's not clear. They wanted the career offenders to do a whole lot of time, whether the reason they'd made a career of crime was crack or something else. So setting aside the ex post facto and whether or not the applicable range was career offender here or 2D1.1, as in the prior Adams case, there's also no clear record of a court, for instance, saying at the time of sentencing, which was in 2010, the career offender range applies. I am, however, varying from that or I'm downward departing from that. I'm looking to 2D1.1 to downward depart from that. While our case is perhaps not as extreme as Adams is, in our case at the 2010 sentencing, the defense of it ---- Give me what page you're looking at. The ---- In the transcript at page 24, which was our excerpt page 62, the court seemed to have ---- So the PSR, which preceded this sentencing, found no career offender. Then the defense position paper was no career offender. Then the court at this sentencing said the career applications do apply because they find that it's a crime of violence. And then the court goes on to talk about the guidelines are largely controlled by career offender. But he doesn't say ---- he doesn't use the language I'm applying career offender and now I'm varying and now I'm departing and I'm looking to 2D1.1. Are you saying that when he says that the guidelines are controlled by career offender, that doesn't mean he's applying them? I think he said largely controlled. But then he goes into talking about all the other 3553 factors, and to me it's not a clear finding such as you might have if he said, I'm finding career offender applies, that's where I'm starting with. I'm starting from there and I'm going downwards and I'm using as a data reference point 2D1.1, which in this case at that time was 92 to 115. Of course, now under the crack reduction, it's half of that, 51 to 63. Everything has changed. There's no mandatory minimum anymore in Mr. Doucette's case. The Fair Sentencing Act, mandatory minimums are gone. It's been made retroactive. His guidelines are half what they were. And so this is a man who came back in 2012 with all that weight of authority and then the Freeman case also talking about how it's district court's duty to remedy this injustice which has been systemic. And he comes back in 2012 and is given a ten-year sentence for nine rocks of cocaine, 51-year-old man with all the medical problems he had, and pepper rehabilitation. So this is a case where it should be remanded to the district court. This is not a case that affects a lot of other cases. I think we're near the end of the pipeline in the 3582 cases. It seems to me that the clearest thing to do is to remand it to the district court. Now that we know that 3582 motions can be reviewed for discretionary review and for reasonableness, the whole context of everything has changed. Mr. Doucette at the time in 2010 was sentenced in the shadow of the crack disparities, and he should be resentenced now in fairness with correct guideline calculations, without any mandatory minimum, and with pepper rehabilitation.  Thank you. Hello again. Jean-Claude Andre, again on behalf of the United States. I'd like to start, if I may, with defendants' criticism of the way the district court reached his sentence in this case. In this case, unlike the previous case, we are defending both on the based-on prong and the applicable guideline prong. The reason why we're defending on the based-on prong is that the district court clearly said that the defendant was a career offender. On page 62 of the excerpts, the district court said, I agree that the defendant is a career offender. On page 67, the district court, when exercising its Kimbrough discretion, then went ahead, sorry, its Booker discretion, went ahead and said that the career offender guideline is, quote, too blunt of an instrument here. So this is not a case where the district court, and it's not because the district court perhaps did not want to, because the district court did not have the authority to, it's not a case where the district court did not throw out the career offender guideline altogether. We'll be considering whether lines 20 and 21 on page 67 mean, I'm not going to sentence him as a career offender because I think it's too blunt an instrument. Yes. And so the reason why they'd want some of that. So the district court in this case, because the defendant had a 10-year mandatory minimum, could not go all the way down to the 2D range. The 2D range in this case was 92 to 115 months, which was below the then-applicable mandatory minimum of 120 months. So in that respect, this case is very much like Augustine and the litany of the circuit court's decision saying that you can't throw out the mandatory minimum in a 3582C proceeding to get a sentence below the pre-FSA mandatory minimum. So in this case, the district court was constrained by that old mandatory minimum. Perhaps, Judge Kleinfeld, it was Judge King's intention, if he had the power to, to go all the way down to 92 months. But the record's unclear on that point. It shouldn't affect this court's inquiry because what this defendant's sentence was based on, again, on that first prong of the analysis, is the mandatory minimum. It's 120 months because that's the floor that Congress had set for this particular case. With respect to the applicable-to analysis. So what he did is he didn't like the career offender guideline, but he felt stuck with it and gave him the career offender guideline floor? No, he gave him the statutory mandatory minimum floor of 120. Not the career offender. Correct, correct. So on the based-on analysis, the defendant's sentence was not based on a guideline range that has been reduced because it was based on the mandatory minimum. On the applicable-to analysis, the applicable-to analysis requires that this court find that defendant's sentence was, or that defendant's applicable guideline range was the career offender guideline because the district court acknowledged on page 62 that he was a career offender. And, again, on page 67, right before the court exercised its Booker discretion, said the career offender guideline is too blunt of an instrument. And, essentially, that should end this Court's analysis. With respect to the ex post facto argument, Trujillo's analysis is not dicta. The defendant in that case briefed the issue. My office, in fact, I was the supervisor of that appeal. We responded. And the Court held what it held, which is that you can't pick and choose various portions of a single slip amendment from the Sentencing Commission. You have to take it as a whole. And in this context, it makes sense because, just as in Trujillo, and I'll give a little bit of background if I may, in Trujillo, the issue was whether Amendment 536, which did two things, whether that was ex post facto. The first thing it did is it lowered the ceiling for the drug quantity table in 2D. It dropped it from 42 down to 38. And it essentially conditioned the benefit that defendants would receive by allowing a district court, in its discretion, to impose an upward departure if the defendant had so many drugs, had such a large quantity of drugs, that an upward departure was warranted. That's essentially what the Sentencing Commission has done here with Amendment 759, insofar as it did confer a benefit to crack defendants, but then it conditioned it when the defendants were career offenders. And in that regard, we think Trujillo's controlling. It's not dicta. And whether the panel agrees with the defendant or not, that it's perhaps not crafted as well as it could be, it is controlling on this panel. The other part of the ex post facto analysis, Judge Christian, you were correct that it's our position that the amendment to 1B1.10 was just a mere clarification. The Sentencing Commission said it was, and I think the case is Jordan, but there's a case of this court where it decides, where it basically says if the Sentencing Commission says it's a clarification to resolve a circuit split, then it is a clarification and it doesn't implicate ex post facto concerns. And, of course, we know it was because the Seventh Circuit in the U.S. v. Guyton case, which we cited in our briefs, had already interpreted the prior version of 1B1.10 and said that career offenders, even if the court varies away, do not get the benefit of a crack amendment. In that case, it was amendment 706, not 759, but it's the same analysis. It was another, you know, reduction to the crack guideline. 706 was the earlier two-level reduction? Yes. Thank you. So, again, if the Court has no further questions, I'm happy to sit down. About 20 seconds, and I just want to correct something that the prosecutor said. I realize he wasn't the lawyer in the district court. The mandatory minimum in this case was five years, not ten. That's clear from the pre-sentence report at paragraph 112, and, of course, that's in the under seal excerpt at page 22. It's also clear from the plea agreement. It's possible that he got it wrong because there had been an 851, which was dismissed at the time of sentencing, and that made the mandatory minimum five and not ten. Thank you. Counsel, I actually did not see the problem in craftsmanship that you suggested in Trujillo. It looks like just straightforward reasoning that you take the bad with the good. It says Trujillo wanted to take advantage of one portion of an amendment to the guideline in disregarded condition. I guess one of the problems I have with that is if that were the case, then you would never have an ex post facto argument that could be made for a 3582 crack reduction based on the amendment. Well, there are going to be problems with ex post facto arguments, particularly since Trujillo, but undoubtedly before then. I mean, the reason we you said there are no citations there. Well, the reason we publish is we don't have controlling law on the question yet. Otherwise, it's a memorandum disposition usually. Well, you know, I haven't briefed it because, of course, it was just raised in the 28-J. I don't know what the law would be on severability. It came down, and it covers an issue in your case. Sure, sure. I don't know what the law would be on severability, but it seems to me like you could take the part that made it permanently retroactive as to the 2D1.1 crack reduction guidelines, but not the part that makes it a complete exclusion as to a 3582, which was one of the four amendments in 759. I can look at that and submit a supplementary brief on the issue. I honestly don't know what the answer is. If we want any more, we can always ask for it. All right. Very well. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Kleinfeld, Christen